IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Leo S.[1], <br><br> Plaintiff, <br><br> v. <br><br> Kilolo Kijakazi, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 22 C 1200 <br><br> Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Leo S. appeals the decision of the Commissioner of Social Security denying his request for Supplemental Security Income (SSI) disability benefits. Because the administrative law judge did not sufficiently support her decision to credit the job numbers of the vocational expert, the Court grants Plaintiff's motion for summary judgment[2] [12], denies the Commissioner's motion for summary judgment [17], and remands this case for further proceedings.

**BACKGROUND**

Plaintiff suffers from various physical and mental impairments, including pain and limited mobility in his left arm and back, depressive disorder, bipolar disorder, anxiety disorder, and a learning disability. (R. at 15). He applied for SSI benefits in May 2015; the application was denied initially and upon reconsideration. (R. at 148, 157, 392). Plaintiff appealed and had a hearing before ALJ Lana Johnson, who denied his claim. (R. at 123-38). However, the appeals council later reviewed and remanded the petition to a different ALJ for a new hearing. (R. at 144-47). On

---

[1] Pursuant to Internal Operating Procedure 22, the Court will identify the non-government party by using his full first name and the first initial of his last name.

[2] Plaintiff filed a Memorandum in Support of Motion for Summary Judgment which the Court construes as a motion for summary judgment.

October 19, 2021, Plaintiff had a hearing before ALJ Cynthia Bretthauer. (R. at 1462). Months earlier, in June 2021, Plaintiff's attorney asked ALJ Bretthauer to issue a subpoena to the vocational expert to bring all documents she would use during her testimony to the hearing so that he could adequately cross-examine her. (R. at 335-339). Counsel warned that he would object to the ALJ relying on certain job-numbers unless the vocational expert produced valid, reliable data and discussed her methodology. (R. at 336).

Plaintiff and vocational expert Tobey Andre testified at the October 2021 hearing. (R. at 1460-1506). Plaintiff discussed his pain, limited mobility, difficulties interacting with others, and trouble learning and retaining information. (R. at 1466-95). The ALJ and Plaintiff's attorney each posed various hypotheticals to VE Andre about jobs that an individual with limitations similar to Plaintiff could perform. (R. at 1495-1506). In response to the ALJ's first hypothetical, the VE identified three positions:

> A Yes, Your Honor, one moment, please. The first position is that of scrap separator, DOT code 529.587-018, with an SVP of 2, at the light level, with approximately 400,000 jobs in the nation. The next position is that of a test worker. DOT code 519.687-042, with an SVP of 2, at the light level, with approximately 300,000 jobs in the nation. The next position is that of -- I'm checking a hypothetical, forgive me. Patching machine operator. DOT code 361-685-022 with an SVP of 2, at the light level, with approximately 38,000 jobs in the nation.

(R. at 1496). After the ALJ changed some of the hypothetical restrictions, the VE identified three other positions:

> A Yes. First position is inspector. DOT code 669.687-014, with an SVP of 2, at the sedentary level, with approximately 250,000 jobs in the nation. The next position is that of bonder, semi-conductor. DOT code 726.685-066 with an SVP of 2, at the sedentary level, with approximately 145,000 jobs in the nation. The next position is that of final assembler of optical goods. DOT 713.687-018, with an SVP of 2, at the sedentary level, with approximately 100,000 jobs in the nation.

(R. at 1497).

Plaintiff's attorney began his cross-examination with a hypothetical; the VE responded there would be no available jobs for that individual. (R. at 1500). Counsel moved on to questions about the source of her job numbers:

> Q     Yeah, Ms. Andre, you have testified you've given very large job numbers for the various positions. Let's take the scrap separator. Can you explain to us how you arrived at 400,000 scrap separator positions?
>
> A     I utilized a software program entitled Job Browser Pro. Scrap separator is part of an SOC code that has 780 distinct job <u>DOT</u> numbers. I -- and I utilized the recommendations as the full-time positions for scrap separator by -- that is recommended by -- that is assigned or stated by Job Browser Pro.
>
> Q     And have you used Job Browser Pro in giving job numbers for all the positions?
>
> A     Yes.
>
> Q     Okay. And if necessary, if the judge requests for you to supply written documentation, would you be able to do so for the various positions as far as our job numbers?
>
> A     Yes.

(R. at 1500-1501). Finally, after Plaintiff's attorney asked the VE if she had observed any of the jobs she testified about, the VE affirmed that she had but declined to provide names of any of her client companies as she considered that information "proprietary." (R. at 1503-1505).

At the conclusion of counsel's brief cross-examination of the VE, he and the ALJ engaged in a final exchange:

> ATTY:  That's all the questions I have. Your Honor, I'm going to -- I'm going to tell you, I believe I have the right to submit rebuttal evidence, and I will do so in this file. Out of respect, I'm telling you I will.
>
> ALJ:    All right, Mr. Tuzzolino, I don't believe you have that right. I think I can make that determination, and I will not be keeping the record open to receive that.

Page **3** of **11**

> ATTY: I'm not asking you to keep the record open, Your Honor, I'm just telling you I'm going to submit it, and we'll see.
>
> ALJ: Okay.
>
> ATTY: So, I respectfully -- I respect you, and I respect your office, and we don't necessarily have to agree on everything. I'm sure we haven't over the years and will probably not in the future, but I will submit something to rebut what the vocational expert has said here today, and we'll see what happens, okay?
>
> ALJ: All right, thank you. At this time, the hearing is adjourned. Good luck to you, Mr. [S.].

(R. at 1505-1506).

The following day, on October 20, 2021, Plaintiff's attorney submitted rebuttal evidence to the ALJ, which purported to include search results from Job Browser Pro showing vastly different job numbers than those attested to by the VE. (R. at 588-621). Counsel stated that upon inputting the respective DOT codes used by the VE into the software program, these job estimates were generated at the light level—scrap sorter, 2,897 positions; test worker, 3,107 positions; and patching machine operator, 1,345 positions—and at the sedentary level—inspector, 220 positions; bonder, semi-conductor, 15 positions; and final assembler of optical goods, 24 positions. He further contended that the job duties of some of those positions exceeded Plaintiff's limitations. Therefore, he argued, the ALJ should give no weight to the VE's unreliable jobs testimony.

On November 3, 2021, ALJ Bretthauer issued a written decision concluding that Plaintiff was not disabled. (R. at 13-28). Following the required analysis, she found that at step one, Plaintiff was not engaged in substantial gainful activity; at step two, he did have severe impairments, but at step three, these impairments did not meet any of the official listings used to determine if a claimant is disabled. (R. at 15-17). Thus, at step four, she determined that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in the regulations except for some

restrictions for physical and mental limitations. (R. at 20). Since the record did not reflect any past relevant work by Plaintiff, the ALJ proceeded to the fifth and final step where she found that there were a significant number of jobs in the national economy Plaintiff could perform. In making this finding, the ALJ relied on the VE's testimony about sedentary-level positions in the national economy such as inspector (250,000 jobs), bonder, semiconductor (145,000 jobs), and final assembler, optical goods (100,000 jobs). The ALJ addressed and resolved Plaintiff's objection to the VE's job numbers testimony as follows:

> The claimant's representative objected to these job numbers on the ground that the [VE's] methodology for determining numbers of jobs is not reliable. [Counsel] alleges that the [VE's] job number estimates were contrived and illegitimate and that the job tasks of the positions the [VE] delineated are different and inconsistent with her testimony (31E). The undersigned overrules this objection. The [VE] has professional knowledge and experience in job placement. During the hearing, the [VE] readily names the sources upon which she relied for such information, and [counsel] was given sufficient opportunity to cross-examine the [VE] as to her methodologies for synthesizing information available from these sources. Additionally, the [VE] stated that she did not rely solely upon the Dictionary of Occupational Titles (DOT), but also upon her professional experience in forming her opinion as to the types of jobs the claimant could perform and the numbers of jobs available in the national economy. Accordingly, the [VE's] job information is found to be reliable.

(R. at 27).

Plaintiff petitioned the appeals council for review, but that request was denied, making the ALJ's opinion the final decision of the Commissioner of Social Security. (R. at 1). Plaintiff timely appealed to this Court.

## **SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW**

The Social Security Administration created a five-step analysis to determine if an individual is disabled. 20 C.F.R. § 416.920. First, a claimant engaged in "substantial gainful activity" is not disabled. *Id*. Second, a claimant must have an impairment or combination of impairments which significantly limits their physical or mental ability to do basic work activities.

Page 5 of 11

*Id*. Third, the ALJ must determine whether the claimant's impairments meet or equal one of the "listings." *Id*. The "listings" refers to 20 C.F.R., Subpart P, Appendix 1, which describes various criteria for different impairments that, if met, will satisfy that the claimant is disabled. Fourth, if no listing is met, the ALJ must determine the claimant's residual functional capacity (RFC) and if the claimant can perform past relevant work. *Id.* Finally, if a claimant cannot perform prior work, then the burden shifts to the Commissioner to show that "other work exists in significant numbers in the national economy" which the claimant can perform with their RFC. 20 C.F.R. § 416.960.

If a claimant appeals the ALJ's decision to the district court, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id*. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court will not reweigh the evidence or substitute its own judgment in place of the ALJ's if there is substantial evidence to support the ALJ's determination. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

While a district court must be highly deferential to an ALJ's findings of fact, when it comes to the estimate of job numbers in step five, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). Although the VE's testimony need not meet the standard for expert testimony in Federal Rule of Evidence 702, it nonetheless "must be supported with evidence sufficient to provide some modicum of confidence in its reliability." *Id*. at 969. In addition, to

Page **6** of **11**

satisfy the substantial evidence standard, the ALJ's reasoning "must provide a 'logical bridge' between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). Even though a "written evaluation of each piece of evidence or testimony is not required," the ALJ must articulate "reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## **DISCUSSION**

Plaintiff argues that the ALJ's decision should be reversed for two reasons: (1) she erred in relying on the VE's job numbers and (2) she failed to explicitly include off-task time when determining his RFC. Because the Court agrees that the ALJ did not fully explain why she credited the VE's testimony about a significant number of jobs Plaintiff could perform, this matter must be remanded.[3]

When considering an application for disability benefits, the Commissioner must "evaluate that person's capacity to work and, at the fifth and final step of the analysis, assess whether significant numbers of jobs exist that someone with those abilities and limitations could perform." *Chavez*, 895 F.3d at 963. To sustain this burden, ALJs often solicit input from VEs who are contracted by the agency to "testify objectively and impartially about the exertional requirements of various jobs and their frequency in the national economy." *Id.* at 964. A VE may consult "the Dictionary of Occupational Titles (DOT), a database of job titles that has not been updated in almost 30 years." *Brace v. Saul,* 970 F.3d 818, 820 (7th Cir. 2020). "The database does not list the number of jobs associated with each job title." *Id.* Instead, "[t]he DOT divides jobs into groups and then lists and describes particular job titles within each group." *Chavez,* 893 F.3d at 965.

---

[3] Because the ALJ erred at step five of the analysis, it is not necessary for the Court to analyze the other issue raised on appeal.

Because the DOT "describes only job duties and requirements, without also reporting an estimate of how many of those positions exists in the national economy[,] [t]o determine the number of jobs, a VE must consult another resource." *Id.*

In this case, the ALJ relied on VE Andre who provided estimated job numbers that were generated by the software program, Job Browser Pro. Aside from asking the VE for the source of her data, Plaintiff's attorney did not inquire at all about her methodology. He did not ask her to detail the specific process she used on Job Browser Pro, nor did he object to the reliability of any of her methods. At the end of all testimony, counsel merely informed the ALJ that he disagreed with the VE's numbers and planned to submit rebuttal evidence. But because plaintiff did not give a specific reason for challenging the VE's numbers, the ALJ was not obligated at that point to ask the VE to further justify her estimates. *See, e.g., Chavez*, 895 F.3d at 969 (explaining that when the basis of the VE's conclusion is challenged at the hearing, the ALJ must probe further to assess the reasonableness of the job number estimates).

It was not until a day after the hearing that Plaintiff's counsel submitted his own purported Job Browser Pro search results with the same job titles but drastically fewer positions—from 250,000 to 220 for inspector; from 145,000 to 15 for bonder, semiconductor; and 100,000 to 24 for assembler, optical goods, and argued that the VE's testimony was flawed. Certainly, if counsel and the VE input identical data points, the output should be the same or at least similar. But as noted above, Plaintiff's attorney never asked the VE to explain how she generated her estimates on Job Browser Pro. And in his submission, counsel did not delineate his own expertise with using this software. As such, his alleged apples-to-apples comparison may be speculative. The Court presumes, in the absence of guidance by either party, that Job Browser Pro users input the type of information the VE mentioned at the hearing—the DOT code and exertional level—and, in turn,

receive an estimated number of jobs for a particular job title. If that is true, then the starkly different numbers from Plaintiff and the VE presented a conundrum for the ALJ to resolve. Whether she followed up with the VE for further clarification post-hearing is not clear from the record.

Two weeks after receiving Plaintiff's rebuttal evidence, though, the ALJ issued her decision overruling Plaintiff's objection and finding the VE's testimony reliable for the following reasons: (1) the VE's professional knowledge and experience in job placement; (2) Plaintiff's opportunity to cross-examine her about her sources and methodology used; and (3) the VE's consultation of the DOT and experience in the workplace observing those jobs. Each of her findings has some support in the record—Plaintiff did not pose any specific questions to the VE about how she arrived at those numbers or challenge the reliability of her method or the suitability of the identified positions; the VE testified about her reliance on DOT titles *and* workplace observations.

That said, notably missing from the ALJ's opinion is any mention of Job Browser Pro—which is odd since the VE identified the software as *the* primary source for her job numbers, and Plaintiff directly challenged *her application* of the program. Because this issue is a critical piece of the step-five analysis that the ALJ did not discuss, a remand is warranted. The ALJ must explain how she resolved that key dispute in order for the Court to determine if there is substantial evidence to support her conclusion that the VE's estimate was more reliable.

To be clear, this Court is not suggesting the ALJ was required to accept Plaintiff's rebuttal evidence. While Plaintiff now suggests that his failure to explore these alleged errors on cross-examination should be excused because the VE did not respond to his earlier subpoena request, he is wrong. The Supreme Court rebuffed attempts to impose a categorical rule that would require courts to automatically reject the testimony of a VE who did not produce underlying data in support of her testimony. *See, e.g., Biestek*, 139 S. Ct. at 1156-1157 ("[Applicant] goes too far in suggesting

that the refusal to provide supporting data always interferes with effective cross-examination, or that the absence of such testing always requires treating an opinion as unreliable. Even without specific data, an applicant may probe the strength of the testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions. And even without significant testing, a factfinder may conclude that testimony has sufficient indicia of reliability to support a conclusion about whether an applicant could find work.") (citation omitted).

In fact, Plaintiff never raised the VE's alleged non-responsiveness at the hearing. Instead, he asked, and she agreed, to provide supporting data post-hearing. A day later, *Plaintiff's lawyer* presented *his own* Job Browser Pro numbers to the ALJ for consideration. But by waiting until after the hearing had ended, Plaintiff may have forfeited his right to challenge to the VE's evidence. *See Donahue v. Barnhart*, 279 F.3d 441, 446-447 (7th Cir. 2002). Perhaps Plaintiff believed he had preserved the argument by advising the ALJ of his intent to submit rebuttal evidence and doing so the next day, but that is a risky proposition. *See Fetting v Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) (explaining that "[t]his objection must be specific; to avoid forfeiture, a claimant must do more than make a general objection or vaguely ask the VE about his methodology."). Still, even though the ALJ disagreed that Plaintiff had any such right, she did consider the evidence and overrule his objection. But in doing so, the ALJ needed to then fully explain why she found the VE's numbers from Job Browser Pro reliable given Plaintiff's competing numbers from the same program. *See, e.g., Owens v. Berryhill*, No. 17-CV-4824, 2018 WL 3303274 at *2-3 (N.D. Ill. July 5, 2018). Because she did not provide that information, the Court cannot find that an accurate and logical bridge has been built between the evidence and her step-five conclusion.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment [12] is granted, and the Commissioner's Motion for Summary Judgment [17] is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

**DATE**: February 9, 2024             **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge